UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>NOEL BIDO,<br><br>　　　　　　Defendant. | No. 14-cr-212 (RJS) |
| NOEL BIDO,<br><br>　　　　　　Petitioner,<br><br>-v-<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　Respondent. | No. 19-cv-8388 (RJS)<br><br>MEMORANDUM AND ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

Petitioner Noel Bido brings this petition pursuant to 28 U.S.C. § 2255 to vacate his conviction under 18 U.S.C. § 924(c). (Doc. No. 947.)[1] Bido, who is currently serving his sentence, argues that his conviction under § 924(c) is invalid in light of the Supreme Court's opinion in *United States v. Davis*, 139 S. Ct. 2319 (2019). For the reasons set forth below, the petition is DENIED.

I. BACKGROUND

In early 2014, a grand jury returned a superseding indictment charging Bido and twenty-three others in connection with their activities as part of a street gang known as the Murda Moore

---

[1] Unless otherwise indicated, all docket citations are to case number 14-cr-212, and references to page numbers correspond to the ECF page numbers, not to the filing's own internal pagination.

Gangstas ("MMG") in the Bronx.  (Doc. No. 2.)  Count One charged Bido and others with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and listed a variety of predicate racketeering acts, including (i) "multiple acts involving murder, in violation of New York Penal Law, Sections 20.00, 105.15, 110.00[,] and 125.25;" (ii) "multiple acts involving robbery, in violation of New York Penal Law, Sections 20.00, 105.10, 110.00, 160.05, and 160.10;" (iii) "multiple acts indictable under Title 18, United States Code, Sections 1951 and 2 (Hobbs Act robbery);" and (iv) "multiple acts involving the distribution of controlled substances, including 280 grams and more of crack cocaine, marijuana, and MDMA, in violation of . . . Title 21, United States[] Code, Sections 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846, and Title 18, United States Code, Section 2."  (*Id.* at 6–7.)  Count Two charged Bido and others with conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846.  (*Id.* at 8–12.)  Count Three charged Bido and others with using, carrying, and discharging firearms in furtherance of both the racketeering conspiracy charged in Count One and the narcotics conspiracy charged in Count Two, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.  (*Id.* at 12–13.)

On July 23, 2014, Bido pleaded guilty to Counts One and Three, pursuant to a plea agreement with the government.  In its colloquy with the Court, the government described Count Three as charging Bido with possession of a firearm during and in relation to a "crime of violence . . . which here is the racketeering conspiracy in Count One."  (Doc. No. 169 at 21.)  During his plea, Bido swore under oath that from around 2006 through 2013, he "was a member of the MMG" and that he "engaged in criminal conduct . . . [i]ncluding robberies, drug dealing, and attempted murder."  (*Id.* at 39–40.)  He further stated that "[d]uring the commission of the crimes, [he] carried a firearm."  (*Id.* at 40.)  The Court sentenced Bido in 2015 to an aggregate term of 90 months'

imprisonment (30 months on Count One to be followed by a mandatory consecutive term of 60 months on Count Three). (Doc. No. 538 at 37.) Bido did not appeal his conviction or sentence.

On August 29, 2019, Bido filed his § 2255 petition to vacate his conviction and sentence on Count Three – the § 924(c) count – in light of the Supreme Court's decision in *Davis*. (*See generally* 19-cv-08388, Doc. No. 1.) In essence, Bido argued that racketeering conspiracy is not a categorical crime of violence and therefore could not serve as a predicate offense for a conviction under § 924(c). The government opposed Bido's petition, arguing that although Bido's § 1962(d) racketeering conspiracy no longer qualifies as a crime of violence for a § 924(c) charge, Bido had nonetheless procedurally defaulted any challenge to his § 924(c) conviction by failing to raise his claim on direct appeal. (Doc. No. 957.) The government further contended that Bido's § 924(c) conviction remained valid on the merits, since his use of a firearm was in furtherance of both the conspiracy to commit racketeering *and* a drug trafficking conspiracy, the latter of which was still a lawful predicate for a § 924(c) conviction after *Davis*. (*Id*.)

## II.  LEGAL STANDARD

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted). "Because collateral challenges are in tension with society's strong interest in the

finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted).

The "procedural default rule" constitutes one such rule and provides that a defendant may not bring a claim on collateral review that "could have been brought on direct appeal . . . absent cause and prejudice." *Id.* at 54.  In other words, "to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error." *Id.* (quoting *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993)).  A petitioner can show cause if, at the time of default, the claim was "so novel that its legal basis [was] not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984).  To demonstrate prejudice, the petitioner must show "not just that the errors 'created a possibility of prejudice, but that they worked to his actual and substantial disadvantage.'" *Borrego v. United States*, 975 F. Supp. 520, 522 (S.D.N.Y. 1997) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  In the context of a guilty plea, to establish prejudice a petitioner "must show that there is a reasonable probability that, but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (discussing prejudice in the context of an ineffective assistance of counsel claim); *see Strickler v. Greene*, 527 U.S. 263, 296 (1999) (finding no prejudice from procedural default since "petitioner has not shown that there is a reasonable probability that his conviction or sentence would have been different").

Of course, a petitioner is always permitted to argue that the federal court's refusal to consider the merits of his claim will result in a fundamental miscarriage of justice, because he is "actually innocent" of the crimes of which he was convicted. *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).  A court may find that a petitioner is actually innocent only when, after reviewing
4

all of the evidence, it concludes that "no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

### III. DISCUSSION

Bido contends that his case falls within the cause-and-prejudice exception, as well as the actual-innocence exception, and is thus not procedurally barred. The Court disagrees.

Though Bido has a plausible argument that a vagueness challenge to § 924(c)(3)(B) was "not reasonably available" to him pre-*Davis* (Doc. No. 978 at 3–4), his petition nevertheless clearly fails because he has not demonstrated prejudice. Bido claims that, since racketeering conspiracy "is no longer a valid predicate for a [§] 924(c) conviction," he therefore "would not have pleaded guilty to Count Three had he known of the error." (*Id.* at 6.) But, while the racketeering conspiracy charged in Count One of the indictment is no longer a valid predicate for a § 924(c) charge, Bido's conviction still rests on a valid predicate – namely, the narcotics conspiracy charged in Count Two.

The Second Circuit provided clear guidance on this point in *United States v. Dussard*, where the Circuit considered the appeal of a defendant who allocuted to a § 924(c) charge predicated on Hobbs Act robbery conspiracy alone but was also charged with narcotics trafficking conspiracy as an alternate predicate. *See* 967 F.3d 149, 157–58 (2d Cir. 2020). The Circuit affirmed the conviction, concluding that the appellant "ha[d] not shown any reasonable probability that he would not have pleaded guilty to [the § 924(c) charge]" based on the narcotics predicate alone.[2] *Id.* at 159. It considered, among other things, the appellant's plea colloquy, during which he admitted that he "conspired with individuals who possessed firearms in order to steal narcotics

---

[2] While the *Dussard* court applied plain error review, the standard used to determine whether the defendant's substantial rights were affected mirrors the standard for prejudice in the procedural default context. *See Dussard*, 967 F.3d at 167 ("An error affects the defendant's substantial rights when it is prejudicial – that is, when there is a reasonable probability that the error affected the outcome of the proceeding." (internal quotation marks omitted)).

5

at gun point," and the presentence report ("PSR"), which noted that the appellant planned to sell the drugs he had stolen for profit. *Id.* at 156. In light of these facts, the Circuit concluded that Dussard would have had "little genuine hope" of being acquitted of the drug trafficking conspiracy at trial. *Id.* at 157. It also emphasized that there was no indication in the record that "provides any basis for an argument that he was willing to plead guilty to [the § 924(c) charge] only if it was tied to the charge of Hobbs Act conspiracy . . . instead [of] the drug trafficking predicate." *Id.* at 158.

As in *Dussard*, there is no indication that Bido would not have pleaded guilty to a § 924(c) charge based only on the narcotics trafficking predicate. Bido's PSR lists Bido as a member of MMG (Doc. No. 218 ¶ 13), an enterprise designed to enrich its members based in part on the sale of controlled substances (*id.* ¶ 18(c)). It further notes that Bido and others "conspired to distribute and possess with intent to distribute various controlled substances, including crack, marihuana, and MDMA," and that Bido sold marijuana to an undercover police officer. (*Id.* ¶¶ 30, 31(g).) Finally, the PSR states that "[f]rom at least 2006 through April 2014," Bido and other members of MMG, "during and in relation to the racketeering conspiracy *and the narcotics conspiracy*, knowingly did use and carry firearms, and, in furtherance of such crimes, did possess firearms, and did aid and abet the use, carrying, and possession of firearms, some of which . . . were discharged." (*Id.* ¶ 32 (emphasis added).)

Perhaps most importantly, Bido specifically admitted under oath during his plea allocution that he "engaged in criminal conduct . . . as a member of the MMG . . . [i]ncluding robberies, drug dealing, and attempted murder," and that "[d]uring the commission of the crimes, [he] carried a firearm." (Doc. No. 169 at 39–40.) He did not object to the government's summary of proof, which proffered that MMG "affected interstate commerce through the sales of narcotics, including crack cocaine and marijuana;" "that members of MMG also engaged in robberies of drug dealers;"

6

and that Bido participated in a "home invasion robbery of a drug dealer in which narcotics proceeds and marijuana w[ere] taken as a result of that robbery." (*Id.* at 42–43.) In addition, the racketeering conspiracy charge to which Bido pleaded guilty was based on predicates that included "multiple acts involving the distribution of controlled substances, including 280 grams and more of crack cocaine, marijuana, and MDMA," in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846, and 18 U.S.C. § 2. (Doc. No. 2 at 7.) As a result, there can be little doubt that Bido did indeed participate in a narcotics conspiracy as a member of MMG and carried a firearm during and in relation to that conspiracy. Moreover, Bido has not provided any evidence to suggest that he would have insisted on going to trial if the plea offer required him to plead guilty to the § 924(c) charge predicated on the narcotics trafficking conspiracy alone, especially since this would have resulted in an identical sentencing range as the plea that took place. Thus, Bido has failed to establish a reasonable probability that he "would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

      Nor has Bido demonstrated that he is "actually innocent" of the § 924(c) charge. "The plain language of § 924(c) requires only that the predicate crime of violence (or drug trafficking) have been committed;" it "does not suggest that the defendant must be separately charged with that predicate crime and be convicted of it." *Johnson v. United States*, 779 F.3d 125, 129–30 (2d Cir. 2015). Accordingly, the fact that the government dropped the narcotics conspiracy charged in Count Two does not preclude a § 924(c) charge based on that conspiracy. Rather, an "actual innocence claim[]" hinges on "all the evidence" regardless of admissibility. *Hyman v. Brown*, 927 F.3d 639, 659 (2d Cir. 2019) (internal quotation marks omitted); *cf. United States v. Miller*, 954 F.3d 551, 559 & n.23 (2d Cir. 2020) (noting the reviewing court may look beyond the trial record in determining whether an error affects the fairness, integrity, or public reputation of judicial

proceedings). And in light of Bido's PSR and plea allocution – where he expressly admitted to his involvement in the narcotics conspiracy and his use of a firearm in furtherance of it – the Court finds that Bido has not met the "demanding" standard required to show that he is actually innocent of the crimes charged, *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013).

In the end, because Bido demonstrates neither prejudice nor actual innocence, his challenge to his § 924(c) conviction is procedurally barred.

### IV. CONCLUSION

Accordingly, for the reasons stated above, Bido's motion under 28 U.S.C. § 2255 is DENIED. Moreover, because Bido has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this order would not be taken in good faith since any appeal would "lack[] an arguable basis in law or fact." *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995). Bido thus may not proceed *in forma pauperis*. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). Finally, the Clerk is respectfully directed to terminate the motions pending at docket number 947 of case number 14-cr-212 and docket number 1 of case number 19-cv-8388, and to close case number 19-cv-8388.[3]

SO ORDERED.

Dated:    March 23, 2021
            New York, New York

                                              RICHARD J. SULLIVAN
                                              United States Circuit Judge
                                              Sitting by Designation

---

[3] Although Bido also seeks the appointment of counsel to assist him in arguing his § 2255 petition (Doc. No. 1012), this request is DENIED since it is mooted by the denial of Bido's petition.